1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RODNEY V. COLEMAN,                          No.  2:19-cv-00369 AC

12                   Plaintiff,

13        v.                                     ORDER AND

14   M.E. SPEARMAN, et al.,                      FINDINGS AND RECOMMENDATIONS

15                   Defendants.

16

17        Plaintiff is a state prisoner proceeding without counsel in this civil rights action filed

18   pursuant to 42 U.S.C. § 1983.  This case is proceeding on plaintiff's complaint against defendant

19   Hartwick on an Eighth Amendment excessive force claim.  ECF No. 8 (screening order).

20        Currently before the court are plaintiff's motion to compel and defendant's motion for

21   summary judgment.  ECF Nos. 39, 49.  The motions have been fully briefed by the parties.  For

22   the reasons that follow, the court denies plaintiff's motion to compel and recommends that

23   defendant's motion for summary judgment be granted.

24        I.      Plaintiff's Motion to Compel

25        On October 2, 2022, plaintiff filed a motion to compel defendant to produce the edited and

26   unedited video tapes from the program office at HDSP where the incident took place.  ECF No.

27   39.  According to the motion, plaintiff asked for the video tapes from defense counsel on the day

28   of his deposition on August 24, 2022.  ECF No. 39 at 1.  Plaintiff did not attach any written

1

1   discovery request propounded on defendant which included a request for these videotapes.[1]

2        Defendant filed an opposition indicating that plaintiff's motion was untimely since the

3   motion to compel deadline was August 26, 2022.  ECF No. 43 (Opposition); see also ECF No. 34

4   (Discovery and Scheduling Order).  Defendant argues that plaintiff has not explained his delay in

5   bringing this motion to compel after the deadline had already expired.  ECF No. 43 at 3.

6   Secondly, plaintiff did not actually request the video tapes in any written discovery request to

7   defendant.  ECF No. 43 at 3-4.  Additionally, plaintiff does not identify the specific video tapes

8   he is seeking with any particularity or with reference to the any specific time frame.  Id. at 4.  To

9   the extent that the court construes plaintiff's motion as a request to reopen discovery, defendant

10  submits that he would be prejudiced by the granting of such relief at this late stage in the

11  proceedings.  "If the [c]ourt is inclined to order the production of the videos identified in the

12  motion to compel, [d]efendant[] request[s] that the [c]ourt allow [d]efendant[] to first assert

13  objections and a response and that the [c]ourt conduct an in-camera review before production is

14  ordered."  Id. at 4.

15       On a motion to compel, the moving party bears the burden of showing why the other

16  party's responses are inadequate or their objections unjustified.  See Williams v. Cate, 2011 WL

17  6217378 at *1, 2011 U.S. Dist. LEXIS 143862 *3 (E.D. Cal. Dec. 14, 2011) (citation omitted).

18  Even setting aside the untimeliness of plaintiff's motion, he has not demonstrated that he made

19  any written request for the videotapes and therefore cannot show how defendant's response to his

20  request for production was inadequate.  Plaintiff does not explain why he did not include the

21  request for videotapes in his written discovery request to defendant.  As a result, he has not met

22  his burden and the court denies his motion to compel defendant to produce the videotapes.

23       In considering whether to grant a motion to amend the scheduling order and re-open

24  discovery, the court considers:

25       1) whether trial is imminent, 2) whether the request is opposed, 3)
         whether the non-moving party would be prejudiced, 4) whether the
26

27  [1] Nor was any such request included in the copy of Plaintiff's Request for Production of
    Documents mistakenly filed with the court on May 8, 2022 and which was also served on
28  defendant.  See ECF No. 36.

2

moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

City of Pomona v. SQM North Am. Corp., 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting United States ex rel. Schumer v. Hughes Aircraft Co., 63 F.3d 1512, 1526 (9th Cir. 1995), vacated on other grounds by 520 U.S. 939 (1997)).  It is "significant" when a party is seeking to re-open discovery rather than extend the discovery deadline.  West Coast Theater Corp. v. City of Portland, 897 F.2d 1519, 1524 (9th Cir. 1990).  "The difference [between the two types of requests] is considerable" because "a request for an extension acknowledges the importance of a deadline, [while] a retroactive request suggests that the party paid no attention at all to the deadline."  Id.

While trial has not yet been set in this case, the remaining factors weigh heavily against reopening discovery in this case.  Defendant opposes the motion and plaintiff has not been diligent in seeking the videotapes even though he knew of their existence.  Moreover, there is no indication in the record that such videotapes from 7 years ago have been retained by CDCR.  It has not been demonstrated that reopening discovery at this late date would actually lead to the relevant evidence plaintiff seeks.  For all these reasons, the court denies plaintiff's motion even when liberally construed as a motion to reopen discovery.

II.      Plaintiff's Allegations

The events at issue occurred at High Desert State Prison where plaintiff was confined.  On May 16, 2018, while plaintiff was being escorted to administrative segregation, he was slammed to the ground by defendant Hartwick after asking for a towel to cover his head to prevent his hearing aids from getting wet in the rain.  ECF No. 1 at 3-4.  As a result, plaintiff injured his left knee, chin, ring finger and right shoulder.  ECF No. 1 at 4.  This use of force was unprovoked and unnecessary.  ECF No. 1 at 5.  Plaintiff asserts that defendant's use of force was also racially motivated.  Id.

Attached to the complaint is a declaration signed under penalty of perjury by Inmate Ford who observed defendant Hartwick escorting plaintiff on May 16, 2018.  ECF No. 1 at 23.  When

plaintiff stepped outside it was raining very hard, and Inmate Ford heard plaintiff ask defendant

Hartwick for a towel to prevent his hearing aids from being destroyed by the rain.  ECF No. 1 at

23.  According to Inmate Ford, defendant Hartwick replied that "it was too late."  Id.  When

plaintiff asked to see the sergeant, defendant Hartwick stated that he was "gonna take [plaintiff]'s

ass down."  Id.  Inmate Ford observed defendant slam plaintiff down face-first to the concrete.

Id.

   III.  Defendant's Motion for Summary Judgment[2]

   In the motion for summary judgment, defendant Hartwick asserts that there is no genuine

issue of material dispute on the merits of the excessive force claim and that he is entitled to

qualified immunity because his conduct did not violate clearly established law of which a

reasonable officer would have known.  ECF No. 49.  Specifically, defendant "Hartwick used

appropriate force to restore discipline—which was necessary to effect custody by keeping other

inmates and correctional staff safe when it appeared that Coleman was resisting escort—and not

maliciously and sadistically to inflict pain."  ECF No. 49 at 7.

   Plaintiff's opposition is handwritten and largely contains citations to case law rather than a

description of the material facts that are in dispute.  ECF No. 54.  At the end of his opposition,

plaintiff complains that defendant conducted discovery in bad faith or withheld discovery.  ECF

No. 54 at 5.

   By way of reply, defendant points out that plaintiff's opposition does not identify any

evidence supporting his Eighth Amendment excessive force claim.  As a result, defendant submits

that "[t]here is no genuine dispute that Defendant's use of force was necessary and appropriately

proportional to the need for force, and therefore Defendant is entitled to summary judgment."

ECF No. 55 at 2.  With respect to qualified immunity, defendant argues that plaintiff does not

identify any clearly established case law that would have led defendant Hartwick to understand

---

[2]  Defendant contemporaneously served plaintiff with notice of the requirements for opposing the motion for summary judgment.  ECF No. 49-6; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

1    that he was violating the law by using a physical hold and his body weight to prevent plaintiff

2    from "snatching back" during an escort to administrative segregation.  ECF No. 55 at 3.  For this

3    reason, defendant requests summary judgment on the basis of qualified immunity.  Id.

4         IV.     Legal Standards

5              A.     Summary Judgment

6              Summary judgment is appropriate when the moving party "shows that there is no genuine

7    dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

8    Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

9    of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

10   F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

11   moving party may accomplish this by "citing to particular parts of materials in the record,

12   including depositions, documents, electronically stored information, affidavits or declarations,

13   stipulations (including those made for purposes of the motion only), admissions, interrogatory

14   answers, or other materials" or by showing that such materials "do not establish the absence or

15   presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

16   support the fact."  Fed. R. Civ. P. 56(c)(1).

17             "Where the non-moving party bears the burden of proof at trial, the moving party need

18   only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

19   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

20   Indeed, summary judgment should be entered, "after adequate time for discovery and upon

21   motion, against a party who fails to make a showing sufficient to establish the existence of an

22   element essential to that party's case, and on which that party will bear the burden of proof at

23   trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

24   of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such

25   a circumstance, summary judgment should "be granted so long as whatever is before the district

26   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

27   56(c), is satisfied."  Id.

28   ////

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

1          B.      Eighth Amendment Excessive Force

2          "[W]henever prison officials stand accused of using excessive physical force in violation

3  of the Cruel and Unusual Punishments Clause, the core judicial inquiry is… whether force was

4  applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

5  cause harm." Hudson v. McMillan, 503 U.S. 1, 7 (1992).  The court's inquiry into an excessive

6  force claim focuses on the extent of the prisoner's injury, the need for application of force, the

7  relationship between that need and the amount of force used, the threat reasonably perceived by

8  the responsible officials, and any efforts made to temper the severity of a forceful response.

9  Hudson, 503 U.S. at 7 (1992) (quotation marks and citations omitted).  While the absence of a

10  serious injury is relevant to the Eighth Amendment inquiry, it does not end it.  Hudson, 503 U.S.

11  at 7.  The malicious and sadistic use of force to cause harm always violates contemporary

12  standards of decency in violation of the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312,

13  327 (1986).  "Because the excessive force inquiry nearly always requires a jury to sift through

14  disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on

15  many occasions that summary judgment or judgment as a matter of law in excessive force causes

16  should be granted sparingly." Avina v. United States, 681 F.3d 1127, 1130 (9th Cir. 2012)

17  (citation omitted).

18          V.      Undisputed Material Facts

19          Plaintiff did not separately respond to Defendant's Statement of Undisputed Facts

20  ("DSUF"), ECF No. 49-7, and those facts are therefore deemed undisputed unless otherwise

21  specified.

22          At all times relevant to the allegations in the complaint, defendant Hartwick was

23  employed as a Correctional Officer at High Desert State Prison who was "responsible for

24  supervising inmates and maintaining the safety and security of the institution to prevent escapes

25  and injury by inmates to themselves, other inmates, correctional staff, and property."  ECF No.

26  49-2 at 2 ¶ 2 (Hartwick Declaration).

27          On May 16, 2018, plaintiff was being moved to the Administrative Segregation Unit after

28  receiving a disciplinary charge for possession of an inmate manufactured weapon that was found

in his cell that he solely occupied.  DSUF at No. 3, 6.  At around 6:40 p.m., defendant Hartwick was assigned to escort plaintiff from the Facility D Program Office to the Administrative Segregation Unit.  DSUF at No. 4.  Prior to this date, defendant had not had any interactions with plaintiff.  DSUF at No. 34.  During this escort, he was handcuffed and placed in waist chains.  Plaintiff's Deposition, 39: 24.

As plaintiff and defendant approached the door to leave the Facility D Program building, plaintiff stopped walking and told defendant that he refused to leave the building.  DSUF at No. 14.  Plaintiff resumed walking, but as he got outside of the Program Office he attempted to pull away and told defendant that he wanted a head cover because it was raining and he was worried that his hearing aids would get wet.  DSUF at No. 15; ECF No. 49-2 at 2, ¶ 3.  Defendant maintained his grip on plaintiff's arm and kept him close.  DSUF at No. 16.  According to defendant, he instructed plaintiff that he was not to pull away during an escort and that he would see what was available to cover plaintiff's head during the escort in the rain.  DSUF at No. 17.  Plaintiff disputes this and indicates that defendant told him he was "not getting nothing."  Plaintiff's Deposition at 40: 11.

The parties agree that when they reached the doorway, plaintiff "snatched back" from the escort.  DSUF at No. 18.  Defendant, who was equipped with pepper spray as well as a baton, grabbed plaintiff's right arm with his right hand and then used both his hands that were located on plaintiff's right arm to force plaintiff to the ground.  DSUF at No. 26.  Once plaintiff was on the ground, defendant Hartwick placed his left knee in the middle of plaintiff's upper back in order to maintain control of him.  DSUF at No. 27.

According to defendant, plaintiff was nearly able to break free from defendant's grasp and, from his vantage point, it appeared that plaintiff was lunging toward Correctional Officer Shaver, who was escorting another inmate from a different Security Threat Group.  DSUF at No. 19-20.  Defendant thought that plaintiff might physically attack the other inmate or C.O. Shaver.  DSUF at No. 23.  It was also defendant's belief at the time that plaintiff had an issue with C.O. Shaver concerning plaintiff's property.  DSUF at No. 21-22.

////

According to plaintiff, defendant told him that he was "going down" and slammed him to the ground.  Plaintiff's Deposition at 44: 2-3.  Defendant then put his knee on plaintiff's back while plaintiff was on the ground.  Plaintiff's Deposition at 46:12.

Correctional Officer Rickett, who is not a party to this action, was working as a Security Patrol Officer in Facility D at HDSP on the date at issue when he heard someone on the patio yell "get down."  DSUF at No. 28; ECF No. 49-5 at 1 ¶ 2 (Declaration of B. Rickett).  Once C.O. Rickett arrived on the patio, he observed plaintiff, who was secured in waist chains, laying face down on the ground in front of the Program Office door.  DSUF at No. 29.  He further observed that defendant Hartwick had his left knee on plaintiff's upper back.  DSUF at No. 30.  Officer Rickett assumed control over plaintiff's legs by placing his hands on plaintiff's ankles to prevent him from kicking any responding staff members.  DSUF at No. 31.

Licensed Vocational Nurse Ochoa arrived at the scene and conducted a medical evaluation of plaintiff noting that plaintiff reported pain to his chin, left knee, and right ring finger; redness on his left knee; and, active bleeding on his right ring finger.  DSUF at No. 35; ECF No. 49-3 at 22 (Medical Report of Injury or Unusual Occurrence).

On this same day, plaintiff was issued a disciplinary Rules Violation Report ("RVR") by defendant Hartwick for willfully resisting a peace officer in the performance of their duties. DSUF at No. 39.  Plaintiff was ultimately found guilty of this disciplinary offense resulting in the loss of 90 days of good-time credits and additional privileges.  DSUF at Nos. 40-41.

The California Code of Regulations authorizes correctional officers to use reasonable force on an inmate when necessary to subdue an attacker, overcome resistance, effect arrest, or gain compliance with a lawful order.  Cal. Code Regs. Tit. 15, § 3268(a)(1) (2018); DSUF at No. 24.  Physical strength and holds, which is defined as any deliberate physical contact, using any part of the body to overcome conscious resistance, is a use-of-force option available to correctional officers.  DSUF at No. 25; see also Cal. Code Regs. Tit. 15, § 3268(c)(3)(2018).

VI.    Discussion

The undersigned finds that defendant has met his initial burden of informing the court of the basis for his motion, and identifying those portions of the record which he believes

1   demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to

2   plaintiff to establish the existence of a genuine issue of material fact.  See Matsushita Elec.

3   Indus., 475 U.S. at 586 (1986).  The court concludes that plaintiff has not submitted sufficient

4   evidence to create a genuine issue of material fact that defendant used excessive force against him

5   based on the factors in Hudson v. McMillan, 503 U.S. 1, 7 (1992).[3]

6           A.      Injury Suffered by Plaintiff

7           Plaintiff's allegations of injuries as well as the nursing examination record submitted by

8   defendant, all indicate that plaintiff's injuries were not severe.  Although the extent of injury and

9   the amount of force are not perfectly correlated, they are certainly connected enough for the

10  undersigned to find that this Hudson factor suggests that the amount of force used by defendant

11  was not severe enough to cause serious injury.  See Wilkins v. Gaddy, 559 U.S. at 38.

12          B.      Need for the Application of Force

13          An inmate's refusal to comply with orders may present a threat to the safety and security

14  of a prison.  Lewis v. Downey, 581 F.3d 467, 476 (7th Cir. 2009); Spain v. Procunier, 600 F.2d

15  189, 195 (9th Cir. 1979).  In this case, it is undisputed that plaintiff "snatched back" during the

16  escort by defendant Hartwick.  Accordingly, some amount of force was permissible to bring

17  plaintiff into compliance with the order to proceed to the Administrative Segregation Unit, and

18  this factor tips in defendant's favor.

19          C.      Relationship Between the Need for Force and the Amount of Force Used

20          In determining whether there has been an Eighth Amendment violation, the standard is

21  "malicious and sadistic force, not merely objectively unreasonable force."  Clement v. Gomez,

22  298 F.3d 898, 903 (9th Cir. 2002); Hudson, 503 U.S. at 9 (not every malevolent touch gives rise

23  to an Eighth Amendment claim).  The undisputed material facts in this case demonstrate that

24  defendant used nothing more than his body weight to keep control of plaintiff during the escort,

25  even though he had a night stick and pepper spray available to him.  Plaintiff does not present any

26

27  [3]  In light of this analysis and in the interests of judicial economy, the undersigned declines to
    address defendants' remaining argument in support of their summary judgment motion based on
28  qualified immunity.

                                                    10

1 evidence which would support an inference that this use of defendant's body weight was

2 malicious or sadistic in intent.  Accordingly, this <u>Hudson</u> factor tips in defendant's favor.

3        D.      <u>Threat Perceived by Defendants</u>

4      The fourth <u>Hudson</u> factor considers "the extent of the threat to the safety of staff and

5 inmates, as reasonably perceived by the responsible officials on the basis of the facts known to

6 them." <u>Whitley</u>, 475 U.S. at 321.  In weighing this factor, courts should be mindful that "in

7 making and carrying out decisions involving the use of force to restore order in the face of a

8 prison disturbance, prison officials undoubtedly must take into account the very real threats the

9 unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates

10 against whom force might be used." <u>Id.</u> at 320.  Although plaintiff questions defendant's

11 perception that plaintiff may have been lunging toward Correctional Officer Shaver or the other

12 inmate who was being escorted, he does not present any evidence upon which a rational juror

13 could find that he posed no threat to the safety of staff or inmates.  This is especially true

14 considering that plaintiff was being escorted to administrative segregation because an inmate

15 manufactured weapon had been found in his cell which he solely occupied.  As a result, this

16 factor weighs in defendant's favor.

17        E.      <u>Efforts Made to Temper the Severity of the Force</u>

18      Although the parties differ as to whether defendant made any effort to obtain a head

19 covering for plaintiff during the escort, this is not a material consideration in determining whether

20 defendant tempered the use of force against plaintiff.  The relevant issue is whether defendant's

21 use of force escalated in proportion to the threat posed by plaintiff's behavior.  Defendant did not

22 use any force against plaintiff until he physically resisted the escort to administrative segregation

23 by "snatching back."  Therefore, this factor does not tip in plaintiff's favor.

24      In light of the above analysis of the Hudson factors, defendant Hartwick is entitled to

25 judgment as a matter of law.  Therefore, the undersigned recommends granting his motion for

26 summary judgment.

27 ////

28 ////

1    VII.    Plain Language Summary for Pro Se Party

2            Because you are acting as your own attorney in this case, the court wants to make sure

3    that you understand this order.  The following information is meant to explain this order in plain

4    English and is not intended as legal advice.

5            The court has reviewed the evidence submitted by the parties and has concluded that there

6    is no need for a trial in this case.  Even taken in the light most favorable to you, the evidence

7    would not support a verdict in your favor.  The magistrate judge is therefore recommending that

8    defendant's motion for summary judgment be granted.  This means that your case will end

9    without the need for a trial.

10           You have twenty-one days to explain why this is not the correct outcome.  Label your

11   explanation as "Objections to Magistrate Judge's Findings and Recommendations."  The district

12   court judge assigned to your case will review any objections that are filed and will make a final

13   decision on the motion for summary judgment.

14                                   CONCLUSION

15           In accordance with the above, IT IS HEREBY ORDERED that:

16           1.  The Clerk of Court randomly assign this matter to a district court judge.

17           2.  Plaintiff's motion to compel (ECF No. 39) is denied and, even construed as a request to

18   reopen discovery, his motion is also denied.

19           IT IS FURTHER RECOMMENDED that:

20           1.  Defendant's motion for summary judgment (ECF No. 49) be granted.

21           2.  Judgment be entered accordingly.

22           3.  The Clerk of Court be directed to close this case.

23           These findings and recommendations are submitted to the United States District Judge

24   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

25   after being served with these findings and recommendations, any party may file written

26   objections with the court and serve a copy on all parties.  Such a document should be captioned

27   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

28   objections shall be served and filed within fourteen days after service of the objections.  The

1    parties are advised that failure to file objections within the specified time may waive the right to

2    appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3    DATED: August 12, 2024

4

5    ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28